**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0401-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSEPH M. EIZAGUIRRE,

     Defendant-Appellant.

_____

Submitted November 15, 2018 – Decided January 15, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-02-0182.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Defendant Joseph M. Eizaguirre appeals the February 22, 2016 Law Division decision denying him entry into the pretrial intervention (PTI) program. See N.J.S.A. 2C:43-14 to 43-20; R. 3:28. He further appeals the June 23, 2017 imposition of an eight-year state prison term on his subsequent guilty plea to second-degree knowingly leaving the scene of an accident resulting in death, N.J.S.A. 2C:11-5.1. We affirm.

When defendant was sentenced, the remaining counts of the indictment were dismissed: second-degree vehicular homicide, N.J.S.A. 2C:11-5; third-degree causing death while driving with a suspended license, N.J.S.A. 2C:40-22(a); and third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2. The charges arose from an incident which occurred July 26, 2014.

As taken from the undisputed facts found by the judge, at approximately 4:49 a.m. a Carlstadt police officer was flagged down by a pedestrian. The officer discovered the body of a man lying in the middle of the roadway, near his parked truck. Police later obtained surveillance video from a nearby business that depicted a white bread van striking the victim as he stood next to his truck. The driver stopped his van, turned off the headlights, then turned them back on again, and drove on. By mid-afternoon, police had located the van parked in the lot of the business that owned it. The victim's blood was found on the van's

damaged headlight. By checking the morning's records, police identified defendant as the driver.

Officers drove defendant from his home to the station to be interviewed. He eventually acknowledged striking the victim and leaving the scene because he was frightened.

At the time, defendant was operating the vehicle on a suspended license, and had the following motor vehicle history: October 16, 2009, operating a motor vehicle with fictitious plates and improper child restraints; February 2, 2010, failure to wear a seatbelt; February 9, 2010, fictitious plates; February 26, 2010, failure to observe traffic control; June 25, 2010, failure to wear a seatbelt; June 29, 2010, careless driving; December 27, 2010, fictitious plates; January 13, 2014, use of cell phone while driving; February 3, 2014, obstructed traffic; July 10, 2014, speeding; and January 6, 2015, unsafe operation. When sentenced, defendant was fully employed, twenty-five years old, had obtained an associate's degree in criminal justice, and was married with a two-year-old child. He had no criminal history, volunteered in the community, and hoped to become a police officer.

After the accident, defendant was diagnosed as suffering from sleep apnea, which his expert attributed as the cause of the accident. Further, the

A-0401-17T3

expert opined that it was "likely . . . that [defendant] panicked because he didn't know what happened, . . . [and] put together a story that made sense to him since he fell asleep at the wheel and did not know what had actually happened." The expert also said that "[m]emory loss is a prominent feature of several disorders including [s]leep [a]pnea."

The trial judge remanded the application to the prosecutor's office for reconsideration, but denied defendant's appeal from the second rejection. In her statement of reasons, the judge found that the prosecutor took into account the nature of the offense and the facts of the case, N.J.S.A. 2C:43-12(e)(1), (2). This included the fact that defendant's first instinct, after he struck the victim, was to shut off his headlights and leave the scene, showing callous indifference to a dying man. Defendant finished his deliveries, parked his truck, and went home.

The victim's widow was interested in the imposition of traditional prosecution and a maximum sentence for the reckless killing of her husband. Thus, the state took into account the desire of the victim to not forego traditional prosecution, N.J.S.A. 2C:43-12(e)(4). Insofar as the needs and interests of society, N.J.S.A. 2C:43-12(e)(7), (17), the prosecutor noted that two of the crimes were second-degree offenses that carried a presumption of incarceration, and that defendant had also been charged with causing death while

unlicensed/suspended pursuant to a 2001 legislative amendment to vehicular homicide and vehicular assaults. N.J.S.A. 2C:40-22. That the Legislature enacted the amendment indicated its concern regarding the offense and its interest in traditional prosecution.

When considering N.J.S.A. 2C:43-12(e)(14), the State concluded that these three separate offenses required traditional prosecution because of the societal interest in addressing the crimes, including the fact that the No Early Release Act, N.J.S.A. 2C:43-7.2, applied to vehicular homicide or death by auto.

The court observed that the diagnosis of sleep apnea and defendant's positive lifestyle characteristics could not overcome the reasoned analysis of the prosecutor. Thus, the prosecutor's rejection of the application was not a patent and gross abuse of discretion given the severity of the crime, the charged offenses, and the deliberate nature of defendant's decision to leave the scene. For those reasons, the judge did not order defendant into PTI.

At defendant's sentencing hearing, a different judge stressed defendant's motor vehicle history. She found aggravating factors three and nine, and placed the greatest weight on factor nine. The judge's concern, because of defendant's motor vehicle history, was that defendant might engage in this type of conduct again in the future. N.J.S.A. 2C:44-1(a)(3). She added as to the need to deter:

"[y]ou can't have an accident, inflict -- hit a pedestrian and leave." N.J.S.A. 2C:44-1(a)(9). The judge declined to find mitigating factor four, N.J.S.A. 2C:44-1(b)(4), because she considered the expert report regarding defendant's sleep apnea to be inconclusive regarding the cause of the accident, or defendant's conduct in leaving the scene. The judge perceived the sleep apnea diagnosis as "a triable issue," but not an excuse or even an explanation for defendant's departure from the scene.

Because defendant's insurance company paid damages to the victim's family, the judge found mitigating factor six, N.J.S.A. 2C:44-1(b)(6); however, she accorded that factor slight weight. She also found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), as defendant had no prior criminal history. Additionally, the judge found mitigating factor eleven, as defendant did have a young child who would be losing the benefit of her father's companionship. N.J.S.A. 2C:44-1(b)(11). She concluded the aggravating factors substantially outweighed the mitigating and therefore sentenced defendant to eight years.

On appeal, defendant raises the following issues for our consideration:

> POINT I
> THE PROSECUTOR'S REJECTION OF DEFENDANT'S PTI APPLICATION CONSTITUTED A PATENT AND GROSS ABUSE OF DISCRETION BECAUSE THE PROSECUTOR FAILED TO CONSIDER ALL THE RELEVANT FACTORS,

6

INCLUDING DEFENDANT'S SLEEP APNEA, RESULTING IN A CLEAR ERROR OF JUDGMENT WHICH SUBVERTED THE GOALS UNDERLYING THE PTI PROGRAM.

POINT II
THE SENTENCE WAS EXCESSIVE. U.S. Const. Amend. VIII, XIV; N.J. Const. Art. I, ¶¶ 1, 12.

As the Supreme Court has recently reiterated, "PTI is essentially an extension of the charging decision, [and] therefore the decision to grant or deny PTI is a 'quintessentially prosecutorial function.'" State v. Roseman, 221 N.J. 611, 624 (2015). Prosecutors enjoy broad discretion in making these decisions. Our review of them is "severely limited." State v. Negran, 178 N.J. 73, 82 (2003). We overrule only when it is clear that the prosecutor's decision refusing to admit a defendant into the program is a patent and gross abuse of discretion. Roseman, 221 N.J. at 624-25 (citations omitted); see also R. 3:28-6(b)(1). In order to establish such a patent and gross abuse of discretion, a defendant must demonstrate that the prosecutor's decision was not premised on a consideration of all relevant factors, was based upon a consideration of irrelevant or inappropriate factors, or amounted to a clear error in judgment. State v. Rizzitello, 447 N.J. Super. 301, 313 (App. Div. 2016) (quoting Roseman, 221 N.J. at 625).

7

Furthermore, in cases where a defendant faces first or second-degree charges, as set forth in Guideline 3(i), a presumption exists against admission. See Roseman, 221 N.J. at 622. In order to overcome that presumption, a defendant must demonstrate compelling reasons which would make a decision against enrollment arbitrary and unreasonable. Ibid. Overcoming such presumptions requires a showing of something extraordinary or unusual about the defendant. Id. at 622-23.

Such a showing has not been made. This defendant has failed to overcome the presumption against admission. Defendant's diagnosis of sleep apnea, assuming it is accurate, does not explain his willful departure from the scene of the accident, the continuation of his delivery route, and his return home at the end of the work day. Rather, the circumstances depict a knowing and conscious decision to leave the victim, who was at least injured, in the middle of the roadway at dawn. While defendant may have suffered from sleep apnea, and was indeed a relatively law-abiding individual with a family and workplace and educational accomplishments, these considerations are insufficient to establish compelling reasons.

The prosecutor gave an individualized assessment of the statutory factors, and explained the reasons defendant's admission into PTI would not advance the

goals of the program. The prosecutor considered factors other than the victim's unwillingness to consent to defendant's admission into PTI. Thus, we see no error in the judge's decision affirming defendant's rejection from the program.

With regard to defendant's challenge to his sentence, the sentencing judge's analysis of the aggravating and mitigating factors was based on the record. Motor vehicle offenses can be included in the calculus of evidence supporting aggravating factor three. See State v. Lawless, 423 N.J. Super. 293, 305-06 (App. Div. 2011) (in a vehicular homicide case, the sentencing judge appropriately cited the defendant's "substantial history of driving while intoxicated and in some instances while his license was suspended" in finding aggravating factor three), aff'd, 214 N.J. 594 (2013); State v. Devlin, 234 N.J. Super. 545, 557-58 (App. Div. 1989). Aggravating factor nine in this case had particular weight in light of the nature of the offense, namely, the departure from the scene by a motorist who had inflicted grave injuries in the course of a motor vehicle accident. Because of the weight the judge accorded the aggravating factors, she concluded that they outweighed the mitigating. So long as that assessment is supported by the evidence, it will be upheld. See Lawless, 214 N.J. at 606; State v. Blackman, 202 N.J. 283, 297 (2010). A sentence will be sustained when the statutory factors are properly balanced and supported by

A-0401-17T3

competent credible evidence. <u>State v. Case</u>, 220 N.J. 49, 65 (2014). Given our deferential standard of review, we do not disturb this sentence. <u>See</u> <u>Lawless</u>, 214 N.J. at 606.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION